UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REINALDO FLORES MELENDEZ,

        Plaintiff,

-against-

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

20-CV-6695 (BCM)

**OPINION AND ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

    Plaintiff Reinaldo Flores Melendez filed this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (the Act), seeking judicial review of a final determination of the Commissioner of Social Security (Commissioner), denying his application for Disability Insurance Benefits (DIB). Now before me are the parties' cross-motions for judgment on the pleadings. For the reasons that follow, the Commissioner's motion (Dkt. No. 26) will be granted, the plaintiff's motion (Dkt. No. 24) will be denied, and the case will be dismissed.

## Background

    Plaintiff was born on January 20, 1991. *See* Certified Administrative Record (Dkt. No. 21) (hereinafter "R. __") at 21, 56, 89. He obtained a G.E.D. in November 2012 and thereafter attended school to become a pharmacy technician. (R. 175.) He held a variety of jobs, including as a ride host at an amusement park (from April 2011 to January 2012), a retail cashier (from February to September 2012), a pharmacy technician (from November 2012 to February 2015), and a barista at a coffee shop (from November 2015 to February 2017). (*Id*.) He also worked briefly as a telemarketer and a receptionist. (R. 64-66.)

    On May 10, 2016, plaintiff saw orthopedic surgeon Aaron Buckland, M.D. and reported that he had been experiencing low back pain and right leg pain for two years, which had increased in the last two months and had become debilitating. (R. 267.) On June 13, 2016, Dr. Buckland

performed an L5-S1 microlumbar discectomy. (R. 244-45.) Two weeks after his back surgery, plaintiff was "almost pain-free." (R. 272.) But on May 2, 2017, plaintiff visited pain medicine specialist Lucia D. Voiculescu, M.D., with low back and left lower extremity pain. (R. 282.) Dr. Voiculescu noted that plaintiff had initially done well after his surgery, but his pain had returned gradually and traveled to his left leg. (*Id*.) Plaintiff told Dr. Voiculescu that he "lost his job as a pharmacy tech in February because he could not stand [for] prolonged periods." (*Id*.) However, his physical examination was unremarkable: he displayed no "[p]ain behavior," his gait was normal, he had "good lumbar flexion/extension/lateral rotation," a negative straight leg raising test, no spasms or trigger points, normal muscle tone and bulk, and no motor deficit. (R. 284.) Dr. Voiculescu recommended physical therapy, non-narcotic medications, and epidural injections. (*Id*.) Plaintiff pursued these treatments, in varying combinations, over the next 20 months, experiencing at least temporary relief from the injections. (R. 346, 374-75, 396-97, 477, 543.) During this period, plaintiff also worked intermittently: as a barista in 2017 and 2018, for a total of three to four months, and for about a month in 2018 at a cellphone store. (R. 58-60.)

On February 13, 2019, plaintiff consulted surgeon Samuel Kim, M.D., who diagnosed a "likely recurrent disc herniation at the R L5-S1 level" and concluded that plaintiff was a candidate for a transforaminal lumbar intrabody fusion (TLIF) procedure. (R. 435.) On March 12, 2019, after a further discussion with Dr. Kim of the risks and benefits of the procedure, plaintiff asked to be "referred to chiro[practor] before doing the TLIF." (R. 460.)

**Plaintiff's DIB Application and Hearing**

Plaintiff applied for DIB on April 20, 2017, alleging disability as of February 10, 2017. (R. 11, 174.) After the Social Security Administration (SSA) initially denied his claim on May 23, 2017, he requested a hearing before an Administrative Law Judge (ALJ). (R. 11.) On February 5,

2019, plaintiff appeared, *pro se*, before ALJ Henry Kramzyk, who also took testimony from vocational expert (VE) David Van Winkle. (R. 46-88.)

At the hearing, plaintiff testified that at the end of 2016 he was experiencing "minor symptoms" but in early 2017 "everything started to happen more" and he could no longer perform his barista job. (R. 61.) Plaintiff testified that his primary problem was his lower back pain and associated leg weakness, but he also had "PTSD [post-traumatic stress disorder] since after the surgery in 2016," for which he had last seen a psychiatrist in 2018. (R. 69.) Plaintiff explained that he experienced pain "from the neck, the cervical, all the way to the sacro, and towards my legs, down my legs" (R. 70-71), and that he received epidural injections "every other week," in lieu of "taking controlled substance pills," to help him sleep at night. (R. 71.) He also took anti-inflammatory medications and wore a back brace. (*Id*.) For anxiety, plaintiff took escitalopram, a selective serotonin reuptake inhibitor. (R. 72.) Plaintiff told the ALJ that his medications caused sleepiness, weakness, dry mouth, and blurry vision, but "not constantly, it's just randomly." (*Id*.)

Plaintiff estimated that he could lift five pounds, walk two to three blocks before stopping to rest, and stand for "an hour max, hour, ten minutes max" before feeling a burning sensation in his legs. (R. 72-73.) He could sit "for long," but had to "keep moving in order to not feel so much uncomfort [sic]." (R. 73.) He lived in an apartment with roommates, where he washed the dishes, kept his room and bathroom clean, and washed his clothes by hand, but did not do other cleaning. (R. 73-74.) He shopped for "light stuff" like bread, ham and cheese, cereal, and milk, and took the subway when necessary (including traveling to his hearing, which took an hour), but tried to stay home "if it's not important." (R. 74, 75-76.) Plaintiff testified that he could dress himself and could sometimes shower without help, but sometimes needed help from a roommate. (R. 74-75.) He

3

attended church once a week (R. 76), spent time writing, reading, drawing, and watching You Tube (R. 75-77), and made ends meet by "babysitting friends' kids." (R. 57.)

VE Van Winkle classified plaintiff's past positions of salesperson, barista, and pharmacy technician as exertionally "light,"[1] ranging from unskilled to semi-skilled, with Specific Vocational Preparation (SVP) ratings of 2 to 4. (R. 79-81.)[2] His past position as a receptionist was sedentary and semi-skilled, with an SVP of 4. (R. 80.) The VE then testified that a hypothetical claimant with the same age, education, and work experience as the plaintiff, and with the same residual functional capacity (RFC) that the ALJ later assigned to plaintiff, would be able to perform plaintiff's past work as a salesperson, telemarketer, barista, and pharmacy technician, as well has his past work as a receptionist "as performed." (R. 81-82.) VE Van Winkle added that such a claimant could also perform other jobs at the light exertional level, including cashier, storage facility rental clerk, and copy machine operator. (R. 82-83.)

### The ALJ's Decision

On June 24, 2019, the ALJ issued an unfavorable written decision (Decision). (R. 11-22.)

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. 404.1567(b).

[2] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time (30 days)." 20 C.F.R. §§ 220.133(b), 404.1568(b). "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties." 20 C.F.R. §§ 220.133(c); 404.1568(c). The SVP ratings reflect the amount of time required by a typical worker to learn the job. *See* Dictionary of Occupational Titles (DOT) App'x C, part II, *available at* https://occupationalinfo.org/appendxc_1.html#II (last visited March 28, 2022). "[U]nskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4[.]" SSR 00-4p (S.S.A. Dec. 4, 2000), 2000 WL 1898704, at *3.

Before undertaking the five-step analysis mandated by 20 C.F.R. § 404.1520(a)(4)(i)-(v), the ALJ found that plaintiff met the insured status requirements of the Act through December 31, 2021. (R. 14.) At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity (SGA) since his alleged onset date. (*Id.*)[3] At step two, he found that plaintiff had no medically determinable mental health impairments (severe or non-severe), and that he had the following severe physical impairments: "cervical degenerative disc disease, lumbar degenerative disc disease with radiculopathy, and status-post lumbar surgery." (*Id.*) At step three, the ALJ found that none of plaintiff's impairments met or equaled the severity of any of the listed impairments in 20 C.F.R. Part 404, subpart P, app'x 1. (R. 14-15.)

Plaintiff does not challenge the ALJ's findings at steps one through three.

Before proceeding to step four, the ALJ found that plaintiff retained the RFC to perform light work as defined in 20 C.F.R. 404.1567(b), with additional restrictions, as follows:

> He can lift and carry 20 pounds occasionally and 10 pounds frequently. He can sit six hours in an eight-hour workday, and can stand and/or walk for six hours in an eight-hour workday. He can occasionally climb ramps and stairs, balance, and stoop. He can never climb ladders, ropes, or scaffolds, and can never crouch, kneel or crawl. The claimant needs to avoid all exposure to hazards such as dangerous machinery and unprotected heights; and cannot drive vehicular equipment.

(R. 15.) In the course of developing plaintiff's RFC, the ALJ considered, but found non-persuasive (R. 19), a one-page letter from Nurse Practitioner Minwha Lee, dated September 7, 2018, stating that plaintiff "has chronic low back pain and has difficulty sitting or standing for long periods of time." (R. 327.) The ALJ also considered, but found non-persuasive (R. 19), a one-page letter from physiatrist Roberto F. Mancuso, M.D., dated January 28, 2019, stating that plaintiff has "a number

---

[3] In the first quarter of 2018, plaintiff earned $4735 "working on and off at Starbuck's Coffee," which exceeded the then-applicable SGA minimum of $1,180 per month. (R. 14.) However, the ALJ did not rely on plaintiff's earnings to find him not disabled, and proceeded to step two. (*Id.*)

of physical limitations," is "in need of further evaluation and treatment," and "[d]uring this time" is "deemed unfit for work or for any strenuous physical activity." (R. 341.)

At step four, the ALJ found that plaintiff could perform his past relevant work as a telemarketer, barista, or pharmacy technician. (R. 20.) Proceeding to step five, the ALJ found, in the alternative and based on the vocational expert's testimony, that plaintiff could perform the jobs of cashier (DOT 211.462-010), storage facility rental clerk (DOT 295.367-026), or copy machine operator (DOT 287.687-014). (R. 21-22.) The ALJ concluded that plaintiff was not under a disability, as defined in the Act, from February 10, 2017 to the date of the Decision. (R. 22.)

The Decision became final on June 16, 2020, when the Appeals Council denied plaintiff's request for review. (R. 1-4.) This action, in which plaintiff is represented by counsel, was filed on August 20, 2020. (Dkt. No. 1.) The Certified Administrative Record was filed on April 12, 2021, and the cross-motions became fully briefed on December 6, 2021. Pl. Reply Mem. (Dkt. No. 28.)

## **The Parties' Positions**

Plaintiff argues primarily that the ALJ's RFC formulation is unsupported by substantial evidence because he improperly found the opinion of Nurse Lee to be non-persuasive after erroneously stating that Lee was not an "acceptable medical source." *See* Pl. Mem. (Dkt. No. 25) at 6-21; Pl. Reply Mem. at 2-4. Plaintiff adds that the ALJ should have further developed the record because, after he discounted the opinions of Nurse Lee and Dr. Mancuso, it did not contain any "other functional opinions." Pl. Mem. at 11. The Commissioner contends that substantial evidence supported the ALJ's RFC determination, *see* Def. Mem. (Dkt. No. 27) at 15-20; that the record was

adequately developed, *id*. at 19, and that substantial evidence supported "the weight assigned to the medical opinions." *Id*. at 21-25.[4]

Although I do not accept every point made in the Commissioner's brief, I agree that the ALJ's Decision was free of legal error requiring remand and supported by substantial evidence.

## Standards

In considering the parties' motions, I have reviewed the entire administrative record (totaling 548 pages) and applied the familiar and frequently reiterated standards used by federal district courts to review decisions of the Commissioner. Generally speaking, a court may set aside an ALJ's decision only if it is based upon legal error or if the ALJ's factual findings are not supported by substantial evidence. *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *Calvello v. Barnhart*, 2008 WL 4452359, at *8 (S.D.N.Y. Apr. 29, 2008), *report and recommendation adopted*, 2008 WL 4449357 (S.D.N.Y. Oct. 1, 2008); *Conyers v. Comm'r of Soc. Sec.*, 2019 WL 1122952, at *11-12 (S.D.N.Y. Mar. 12, 2019).

"Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "In determining whether substantial evidence exists, a reviewing court must consider the whole record,

---

[4] Both parties ignored the provisions of Court's Scheduling Order (Dkt. No. 13) designed to clarify the issues and streamline the briefing. For example, although plaintiff was required to include a "full description of the relevant facts" in his brief, Sched. Order ¶ 5(a), he presented a fairly skimpy summary of the medical evidence in less than four pages. Pl. Mem. at 2-5. And although the Commissioner was required to state whether she "agrees with plaintiff's descriptions of the relevant facts . . . and – if not – whether plaintiff's description misstates, mischaracterizes, or omits any material facts," Sched. Order ¶ 6, she presented a detailed, nine-page description of the medical record that significantly overlapped with plaintiff's presentation but did not even mention it, much less identify the portions, if any, with which she disagreed. Def. Mem. at 3-12. The parties and their counsel are advised that any future failure to comply with this Court's orders may result in the rejection of non-compliant filings.

examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Longbardi v. Astrue*, 2009 WL 50140, at *21 (S.D.N.Y. Jan. 7, 2009) (citing *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) and *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)). However, the reviewing court's task is limited to determining whether substantial evidence exists to support the ALJ's fact-finding; it may not reweigh that evidence or substitute its judgment for that of the ALJ where the evidence is susceptible of more than one interpretation. "[O]nce an ALJ finds facts, [the court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise.*" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original) (quotation marks omitted). Thus, the substantial evidence standard is "a very deferential standard of review." *Id.*

A claimant's RFC is the "most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). A claimant's RFC is based on all of the relevant medical and other evidence in the record, including her credible testimony, objective medical evidence, and medical opinions from treating and consulting sources. 20 C.F.R. § 404.1545(a)(3). Although necessarily informed by the medical evidence in the record, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ[.]" *Curry v. Comm'r of Soc. Sec.*, 855 Fed. App'x 46, 48 n.3 (2d Cir. 2021).

In evaluating a disability claim filed on or after March 27, 2017 – including the claim at issue here – the ALJ need not "defer" or "give any specific evidentiary weight, including controlling weight," to any medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a). Rather, the ALJ must evaluate the "persuasiveness" of each opinion or finding in light of: (i) its "[s]upportability"; (ii) its "[c]onsistency"; (iii) the "[r]elationship" between the medical source and the claimant; (iv) the source's "[s]pecialization" in a relevant medical field;

and (v) "other factors that tend to support or contradict" the opinion or finding. 20 C.F.R. § 404.1520c(c)(1)-(5). Of these, the most important factors are "supportability" and "consistency." *Id.* § 404.1520c(b)(2); *see also Rivera v. Comm'r of the Soc. Sec. Admin.*, 2020 WL 8167136, at *11 (S.D.N.Y. Dec. 30, 2020), *report and recommendation adopted sub nom. Rivera v. Comm'r of Soc. Sec. Admin.*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021).

As to supportability, the regulations provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). As to consistency: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2). The ALJ need not discuss all of the factors described in the regulations, but must, as to each opinion or prior administrative medical finding, "explain how [he or she] considered the supportability and consistency factors." *Id.* § 404.1520c(b)(2).

In weighing medical opinions, "[t]he ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015). Regardless of how many (or how few) medical source statements the ALJ receives, however – or his assessment of them – the determination of the claimant's RFC is reserved to the ALJ, who is not required to accept, or follow, any one medical opinion. *See Camille v. Colvin*, 652 Fed. App'x 25, 29 n.5 (2d Cir. 2016) (summary order) ("An ALJ may accept parts of a doctor's opinion and reject others."). "[I]t is the ALJ's prerogative to make an RFC assessment after weighing the evidence and the District Court

may not reverse provided there is substantial evidence in the record to support her findings." *Moronta v. Comm'r of Soc. Sec.*, 2019 WL 4805801, at *19 (S.D.N.Y. Sept. 30, 2019) (quoting *Mitchell v. Astrue*, 2010 WL 3070094, at *5 (W.D.N.Y. Aug. 4, 2010)) (alteration in original).

### Nurse Lee's Opinion

Insofar as the record reveals, plaintiff first visited Nurse Lee, to establish care at Avicenna Medical Center, on September 7, 2018. (R. 346-49.) Nurse Lee took his medical history and conducted a physical examination, which was unremarkable except for "mild restriction in ROM [range of motion] of spine due to pain." (R. 347.) Plaintiff had normal strength in both legs, with no clubbing or edema, and reported that he was taking no medications. (R. 346-47.) However, in light of his complaint of "intermittent weakness" in the legs, she referred him to "ortho spine and PT." (R. 347.) Nurse Lee also noted plaintiff's low body mass index (BMI) of 16.73. (*Id.*)[5] Plaintiff saw Nurse Lee again on September 14 and October 19, 2018, for follow-up after his lab results were received. (R. 350-53.) At these visits he did not report, and she did not observe, any further back-related symptoms or limitations.[6]

Nurse Lee's opinion is dated September 7, 2018 – the date of his first visit to her – and contains two substantive sentences. Those sentences state that as a result of his disc herniation of the lumbar spine and spine surgery in 2016, plaintiff "has chronic low back pain and has difficulty sitting or standing for long periods of time." (R. 327.) The ALJ found this opinion "non-

---

[5] A healthy adult BMI is between 18.5 and 24.9. Centers for Disease Control, "About Adult BMI," https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/index.html#InterpretedAdults (last visited March 28, 2022).

[6] At the September 14 visit plaintiff complained of a frequent urge to urinate and testicular numbness, and was referred to a urologist. (R. 351.) At the October 19 visit, he reported loss of appetite one and a half weeks after his wisdom teeth were removed. (R. 352.) His physical examinations on September 14 and October 19 were unremarkable except for his BMI – which actually increased slightly, to 17.15, by October 19. (R. 352.) At both visits, plaintiff demonstrated "normal ROM" in all extremities. (R. 350, 352.)

persuasive" because (1) Nurse Lee is "not an acceptable medical source"; (2) the opinion was "a one-page document" which "does not include detailed observations supporting her allegations about the claimant's difficulty in performing work-related activities"; and (3) the opinion was "not consistent with the evidence," in particular, plaintiff's relatively wide range of activities, including personal care, cooking, laundry, using public transportation, walking up to three blocks, and shopping, all without assistance. (R. 19.)

Plaintiff is correct that Nurse Lee was in fact an "acceptable medical source" under the relevant regulations. *See* 20 C.F.R. § 404.1502(a)(7) (for claims filed after March 27, 2017, acceptable medical sources include licensed advanced practice nurses for impairments within their licensed scope of practice); *Cherry v. Comm'r of Soc. Sec. Admin.*, 813 F. App'x 658, 661 (2d Cir. 2020) ("The regulations were amended in 2017 to add advanced practice registered nurses (a category that includes nurse practitioners) to the list of acceptable medical sources[.]").[7] The ALJ's error on this score, however, was harmless, because he analyzed Nurse Lee's opinion in accordance with the regulations applicable to acceptable medical sources and properly applied the required factors to determine that her opinion was not persuasive.[8]

---

[7] According to the New York State Department of Education, Office of the Professions, Minwha Lee was, through April 2021, licensed as a Nurse Practitioner in Adult Health, with prescription privileges. *See* https://www2.nysed.gov/COMS/OP001/OPSCR1 (last visited March 28, 2022).

[8] *See Gassiraro v. Saul*, 2021 WL 842581, at *6 (E.D. Mo. Mar. 5, 2021) (ALJ's error in concluding that psychologist Leonberger was not an acceptable medical source was harmless where "the ALJ fully considered Dr. Leonberger's findings, applied the special [psychiatric] technique, and found that Dr. Leonberger's findings were not determinative given the nature and length of his treatment relationship with Plaintiff, the supportability of his findings with medical signs, findings, and explanations, as well as the medical record evidence as a whole"); *Baldauf v. Comm'r of Soc. Sec. Admin.*, 2020 WL 4529937, at *3 (D. Ariz. Aug. 6, 2020) (ALJ's misimpression that opinions from non-acceptable sources could be disregarded was harmless where the ALJ "gave other germane reasons for rejecting the nurse practitioner's opinion"); *Prue v. Comm'r of Soc. Sec.*, 2014 WL 37669, at *5 (D. Vt. Jan. 6, 2014) (although ALJ erred in stating that psychologist Young was not an acceptable medical source, "the error was harmless because the ALJ gave other good reasons,

As to supportability, the ALJ correctly noted that Nurse Lee did not present any "objective medical evidence" or "supporting explanations," 20 C.F.R. § 404.1520c(c)(1), to undergird her opinion that plaintiff had "difficulty standing or sitting for long periods of time." (R. 19.) *See Rivera v. Comm'r of the Soc. Sec. Admin.*, 2020 WL 8167136, at *16 (S.D.N.Y. Dec. 30, 2020) ("'supportability,' under the new regulations, has to do with the fit between the medical opinion offered by the source and the underlying evidence and explanations 'presented' by that source to support her opinion"), *report and recommendation adopted sub nom. Rivera v. Comm'r of Soc. Sec. Admin.*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021); *Herrera v. Comm'r of Soc. Sec.*, 2021 WL 4909955, at *10 (S.D.N.Y. Oct. 21, 2021) (denying plaintiff's remand motion where the ALJ explained that the assessments of Nurse Mesquita were "unpersuasive" because, among other things, "they lacked narrative and corresponding treatment records to support or link the severe functional limits she assessed"). Even when Nurse Lee's underlying treating notes are scoured for supporting evidence, the only relevant finding is the "mild restriction in ROM of spine" that she observed (but did not further quantify) during her initial physical examination on September 7, 2018. (R. 347.) Moreover, although plaintiff reported weakness in both legs, Nurse Lee found "normal muscle strength of BL [bilateral] legs" when she examined him. (*Id*.) The ALJ thus did not err in finding deficiencies in "the supportability factor." *Rosario v. Comm'r of Soc. Sec.*, 2022 WL 819810, at *10 (S.D.N.Y. Mar. 18, 2022) (ALJ satisfied supportability factor by "analyzing

---

supported by substantial evidence, for the weight assigned to Young's . . . opinions."); *Lane ex rel. S.A.H. v. Comm'r of Soc. Sec.*, 2014 WL 4885344, at *3 (N.D.N.Y. Sept. 30, 2014) ("the ALJ's erroneous designation of [licensed social worker Morentin] as a 'nonmedical source' was harmless" where "there is no basis for finding that Mr. Morentin's opinion was entitled to more than the 'little weight' the ALJ accorded to it").

[physician assistant's] underlying treatment records against her opinion, and finding an incongruity").

As to consistency, which requires the ALJ to compare the medical opinion with "evidence from other medical sources *and nonmedical sources*," 20 C.F.R. § 404.1520c(c)(2) (emphasis added), ALJ Kramzyk appropriately considered plaintiff's activities of daily living (ADLs), including personal care, cooking, laundry, travel on public transportation, walking (up to three blocks, according to plaintiff's testimony), and shopping unassisted. (R. 19.) *See Medina v. Comm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d Cir. 2020) (even under prior "treating physician rule," ALJ permissibly afforded Dr. Shah's opinion "little weight" after noting that his "assessment of [plaintiff's] limitations was inconsistent with Shah's own treatment notes and [plaintiff's] self report of her activities of daily living."); *Curry*, 855 F. App'x at 48-49 (ALJ was entitled to discount treating physician's opinion as inconsistent with plaintiff's "own statements and record of independent activities," among other things); *Villalobo v. Saul*, 2021 WL 830034, at *13 (S.D.N.Y. 2021) ("[T]he ALJ acted appropriately in affording Dr. Marrero-Figarella's opinion less weight because, as the ALJ explained, it was inconsistent with both Plaintiff's self-reported activities of daily living and the treatment records."). Having properly analyzed both supportability and consistency, the ALJ did not err in determining that Nurse Lee's opinion was not persuasive.[9]

## Adequacy of the Record

Towards the end of his moving brief, plaintiff argues, in a conclusory fashion, that once the ALJ found Nurse Lee's opinion not persuasive, leaving "no functional opinions contained

---

[9] Although the ALJ did not specifically analyze the relationship between the medical source and the claimant, *see* 20 C.F.R. § 404.1520c(c)(3), the fact that Nurse Lee issued her opinion after a single appointment with plaintiff also tends to undermine its persuasiveness.

13

within the record," Pl. Mem. at 11,[10] he could not formulate plaintiff's RFC without violating the rule against "substitut[ing] his own judgment for competent medical opinion." *Id*. (quoting *Hazelwood v. Comm'r of Soc. Sec*., 2013 WL 4039419, at *5 (N.D.N.Y. Aug. 6, 2013). I disagree.

The Second Circuit rejected essentially the same argument in *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5 (2d Cir. 2017) (summary order), where the ALJ declined to give controlling weight to the only medical opinion in the record (from plaintiff's treating source Dr. Wolkoff), and then found that plaintiff retained the RFC to perform a full range of work at all exertional levels. *Id*. at 6. On appeal, plaintiff challenged the ALJ's rejection of Dr. Wolkoff's opinion and made the "related argument" that, "because the ALJ rejected Dr. Wolkoff's opinion, there was no competent medical opinion that supported the ALJ's RFC determination." *Id*. at 8. The Court of Appeals upheld the ALJ's decision, explaining that where "'the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity,' . . . a medical source statement or formal medical opinion is not necessarily required." *Id*. at 8 (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 Fed. Appx. 29, 34 (2d Cir. 2013) (summary order)). *See also Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (upholding ALJ's RFC determination where ALJ rejected physician's opinion but relied on same physician's findings and treatment notes); *Villalobo*, 2021 WL 830034, at *21 (S.D.N.Y. Feb. 9, 2021) ("[T]the Court rejects Plaintiff's

---

[10] As noted above, plaintiff submitted a one-page letter from Dr. Mancuso, which the ALJ also found non-persuasive, in part because "a doctor's statement indicating that the claimant is 'unfit for work or any strenuous physical activity' is not a medical opinion, but rather an administrative finding reserved for the Commissioner." (R. 19.) Plaintiff does not challenge the ALJ's evaluation of Dr. Mancuso's opinion. *See* 20 C.F.R. § 404.1520b(c)(1) (agency will disregard, as "[e]vidence that is inherently neither valuable nor persuasive," statements to the effect that a claimant is or is not "disabled, blind, able to work, or able to perform regular or continuing work," because the Commissioner is responsible for making those determinations); *Nunez v. Astrue*, 2013 WL 3753421, at *11 (S.D.N.Y. July 17, 2013) (SSA "regulations specify that the ultimate conclusion of whether an individual is 'disabled' or 'unable to work' is reserved to the Commissioner and conclusory opinions by others are entitled to no particular weight.").

contention that the ALJ impermissibly based the RFC assessment on her own lay opinion by affording limited weight to all three opinions of record.").

Here, the plaintiff's disability claim is fairly straightforward, and the record contains extensive treating notes from (among others) orthopedic surgeon Dr. Buckland (R. 267-273, 275, 277-78, 300-02, 304-06), pain specialist Dr. Voiculescu (R. 282-85, 321-24, 477-79), primary care physician Afet Seidler, D.O. (R. 375-79, 382-84, 396-99, 469-72, 474-77), physiatrist Dr. Mancuso (R. 532-39), Nurse Lee (R. 346-53), neurological surgeon Dr. Kim (R. 433-46, 455, 458-64), and physical therapists Jeffrey Sam and Corina Ehrenberg (R. 309-17), as well as numerous imaging reports (R. 202-03, 333-39, 344, 357-59, 440-42), a nerve conduction test, and an electromyography study. (R. 328-32.)[11] Some of these reports were received after the hearing, as a result of the ALJ's careful questioning of the plaintiff to make sure that he reported all of his treating medical providers. (R. 11, 52-55.) The record also contains substantial non-medical evidence concerning plaintiff's capacity for work and work-like activities after his claimed onset date. Thus, while in more complex cases courts in this Circuit have remanded where the ALJ's rejection of one or more medical opinions leaves a "gap" in the opinion evidence,[12] it was not error

---

[11] Michelle Molina, M.D., who performed the nerve conduction test and electromyography study, advised plaintiff to "avoid pushing, pulling, lifting heavy objects," as well as "repetitive movements at the wrist and elbow." (R. 332.) She did not recommend any restrictions on standing or sitting. However, plaintiff does not identify Dr. Molina's advice as a medical opinion, and the ALJ did not expressly treat it as such.

[12] *See, e.g., Rosario v. Kijakazi*, 2022 WL 875925, at *16 (S.D.N.Y. Mar. 15, 2022) (recommending remand, "[p]articularly given the complexity of this case," where there were no treating or consultative opinions in the record and the ALJ improperly relied on the stale opinion of a state agency reviewer unaware of plaintiff's subsequent psychiatric history); *Hogans v. Comm'r of Soc. Sec.*, 2020 WL 5496114, at *14 (S.D.N.Y. Sept. 11, 2020) (since plaintiff "has multiple severe impairments and has undergone several surgeries," ALJ's rejection of the opinions of his treating physicians, even if otherwise proper, "created an evidentiary gap in the record requiring remand") (citation omitted); *Wilson v. Colvin*, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (reasoning, in a case involving multiple physical and mental impairments, that even

in the case now before this Court for the ALJ to "render a common sense judgment about functional capacity," *Hogans*, 2020 WL 5496114, at *14 (quoting *Grimmage v. Comm'r of Soc. Sec.*, 2018 WL 4103184, at *3 (W.D.N.Y. Aug. 29, 2018)), after finding the opinion evidence unpersuasive. *See also Curry*, 855 Fed. App'x at 48 n.3 ("[a]n RFC finding is administrative in nature, not medical"); *Cepeda v. Comm'r of Soc. Sec.*, 2020 WL 6895256, at *11 (S.D.N.Y. Nov. 24, 2020) ("Regardless of how many medical source statements the ALJ receives – or the weight he assigns to them – the determination of the claimant's RFC is reserved to the ALJ, who is not required to accept, or follow, any one medical opinion *in toto*.").

### **Substantial Evidence**

As noted above, a claimant's RFC is the most he can do despite his limitations. 20 C.F.R. § 404.1545; SSR 96-8p, 1996 WL 374184, at *4 (S.S.A. July 2, 1996). The ALJ must assess the claimant's RFC based on all the relevant medical and other evidence of record and take into consideration the limiting effects of all the claimant's medically determinable impairments. *See* SSR 96-8p, 1996 WL 374184, at *2, *5. Here, as in *Pellam v. Astrue*, 508 F. App'x 87 (2d Cir. 2013) (summary order), the ALJ limited plaintiff to light work with additional restrictions, thereby recognizing that his impairments, including pain symptoms, affected his work-related functioning, but did not preclude all gainful employment. *Id.* at 91 (noting that ALJ's RFC determination "took account of the fact that [plaintiff] experienced at least some pain, that her range of motion was somewhat limited, and that she needed to alternate between sitting and standing"). And here, as in *Pellam*, the ALJ's analysis was "reasonable and supported by substantial evidence." *Id*.

---

if the ALJ "properly discounted the opinions of [Drs.] Annabel and Toor," that rejection "created an evidentiary gap in the record requiring remand").

That evidence included plaintiff's multiple normal or near-normal physical examinations (R. 17-18),[13] as well as the (partial) pain relief he obtained from epidural injections. (R. 18, 375, 396, 477, 543), which he preferred to narcotic pain medication. (R. 71.) The ALJ also properly considered plaintiff's decision in February 2019 to put off surgery in favor of chiropractic treatment (R. 18, 464), and his independence in a wide range of daily activities, including cooking, cleaning, laundry, shopping, and traveling by subway. (R. 18, 57-76). *See Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) (ALJ properly considered claimant's ADLs, including walking her dog and cleaning her house, in support of an RFC finding for light work); *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (activities including occasional vacuuming, washing dishes, driving, watching television, reading, and using the computer supported light work RFC); *Ortiz v. Saul*, 2020 WL 1150213, at *1 (S.D.N.Y. 2020) ("Plaintiff's ability to perform a range of light household chores, including cooking, shopping, cleaning, and laundry . . . support[s] a light work RFC finding.").

Finally, the ALJ was entitled to consider plaintiff's demonstrated ability to work at least intermittently – as a cellphone salesman, barista, and babysitter – long after his claimed onset date. (R. 18, 57-61.) *See Jordan v. Comm'r of Soc. Sec.*, 2018 WL 1388527, at *11 (S.D.N.Y. Mar. 19,

---

[13] On May 2, 2017, as noted above, plaintiff displayed no "[p]ain behavior," his gait was normal, he had "good lumbar flexion/extension/lateral rotation," a negative straight leg raising test, no spasms or trigger points, normal muscle tone and bulk, and no motor deficit. (R. 284.) On September 7, 2018, his physical examination was unremarkable except for "mild restriction in ROM [range of motion] of spine due to pain" (R. 347), for which he was taking no medication. (*Id*.) On November 8, 2018, when plaintiff presented at the emergency room with pain triggered by lifting a heavy object from the ground, the examination revealed reproduceable paraspinal right L5 pain and mild mid-line tenderness, but plaintiff's sensation was intact, his strength was 5/5 "throughout," and he performed a "[n]ormal heel and toe walk." (R. 468.) On January 22, 2019, plaintiff's straight leg raising test was positive on the right side, and his exam revealed sciatic notch tenderness on the right, as well as tenderness with lumbar extension, but his strength and reflexes were normal. (R. 542.) Later that day, after an epidural injection, plaintiff noted "a substantial reduction in their pain." (R. 543.) On February 13, 2019 – a week after his hearing before the ALJ – plaintiff's muscle strength and reflexes were normal "throughout," as was his gait. (R. 435.)

2018) (plaintiff part-time work as a babysitter "did not *per se* disqualify Plaintiff from benefits," but ALJ "accurately noted that childcare is usually performed at the light exertion level, supporting the conclusion that Plaintiff's work activity demonstrated her ability to meet the exertional demands of at least light work"); *Johnston v. Colvin*, 2015 WL 657774, at *9 (S.D.N.Y. 2015) (plaintiff's "ability to work part-time," while not per se disqualifying, "remains evidence that the ALJ may consider in determining the severity of [his] impairment").

To be sure, there is some evidence in the record that would support the conclusion that plaintiff had greater limitations than those the ALJ incorporated into his RFC determination. But that is not the test. "If the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." *Johnson v. Astrue*, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008). Having found that the ALJ's decision was free of legal error, I am required, under the "very deferential standard of review" that applies to ALJ fact-finding, to accept the Commissioner's RFC determination. *Brault*, 683 F.3d at 448.

## Conclusion

For the reasons set forth above, plaintiff's motion (Dkt. No. 24) is DENIED, the Commissioner's motion (Dkt. No. 26) is GRANTED, and this action is DISMISSED.

The Clerk of Court is respectfully directed to close the case.

Dated: New York, New York
       March 28, 2022

                                        **SO ORDERED.**

                                        _____
                                        **BARBARA MOSES**
                                        **United States Magistrate Judge**